IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LEONARD K. BAYLIS, | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | Civ No.: 06-11-SLR |
| | : | |
| STANLEY TAYLOR, et al., | : | |
| | : | JURY OF 12 DEMANDED |
| Defendant(s) | : | |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE RESPONSE OF
DEFENDANTS, CHRIS MALANEY AND CORRECTIONAL MEDICAL SERVICES, INC.,
IN OPPOSITION TO PLAINTIFF'S MOTION FOR INJUNCTIVE RELIEF
AND DEFENDANTS' CROSS-MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Statement Of Facts And Procedural Posture

Plaintiff-prisoner, Leonard Baylis, was incarcerated in the Delaware Correctional Center ("DCC") when he filed a Complaint in this matter on January 3, 2006, pursuant to 42 U.S.C. § 1983.[1] D.I. 2. Named as defendants are "Stan Taylor et al, Mr. Thomas Carroll et al and Chris Malaney etal". D.I. 2. Correctional Medical Services ("CMS") is a private corporation that has been providing medical care to Delaware inmates since July 1, 2005.[2] Christine Malaney holds a supervisory position for CMS: Health Services Administrator.

---

[1] 42 U.S.C. § 1983 reads, in part:
> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory…subjects, or causes to be subjected, any citizen of the United States…to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in the action at law, suit in equity, or other proper proceeding for redress.

[2] Prior to July 1, 2005, CMS had provided medical care to Delaware inmates from July 1, 2000 through June 30, 2002.

The prisoner alleges mental health problems including chronic depression, seizures, and adult ADD. D.I. 2. He further alleges that since his transfer to Delaware Correctional Center ("DCC") from the Howard Young Correctional Institution ("HRYCI") on November 17, 2005, he has not received proper medications and mental health therapy. D.I. 2. Although not entirely clear what medication(s) the inmate claims he did not receive, it appears that the inmate is referring to the non-admistration of a schedule II controlled substance, Ritalin.

The Court received an emergent request for a preliminary injunction from plaintiff. D.I. 3. In its Memorandum Order, D.I. 4, the Court directed the defendants to file a response to request for an injunction regarding the issues of non-administration of medication and mental health treatment. This is the Response of Defendants, Chris Malaney and CMS[3], in Opposition to Plaintiff's Motion for Injunctive Relief and Defendants' Cross-Motion to Dismiss Plaintiff's Complaint.

A.   STANDARD OF REVIEW

"The grant of injunctive relief is an 'extraordinary remedy, which should be granted only in limited circumstances.'"[4] The grant or denial of a motion for injunctive relief is within the sound discretion of the district judge.[5]

A plaintiff moving for a injunctive relief must demonstrate: i) the likelihood of success on the merits; ii) the extent to which the plaintiff is being irreparably harmed by the conduct complained of; iii) the extent to which the defendant will suffer irreparable harm if the requested relief is granted; and iv) the public interest will not be adversely affected by the granting of

---

[3] Although not specifically identified as a "Defendant", this opposition to injunctive relief and cross-motion to dismiss is brought by CMS, to the extent the Complaint can be construed as containing allegations against CMS.
[4] *Instant Air Freight Co. v. C.F. Air Freight, Inc*., 882 F.2d 797, 800 (3d Cir. 1989)(*quoting Frank's GMC Truck Ctr., Inc. v. Gen'l Motors Corp*., 847 F.2d 100, 102 (3d Cir. 1988)).
[5] *Eli Lilly & Co. v. Premo Pharmaceutical Laboratories, Inc*. 630 F.2d 120, 136 (3d Cir. 1978).

relief.[6] An injunction should only issue if all four factors favor relief.[7]

The prisoner must demonstrate a likelihood of success on the merits of his claims based upon an alleged Eighth Amendment violation for failure to provide adequate medical treatment to a prisoner. However, an act of a prison official only becomes such a constitutional violation when it results from the "deliberate indifference to a prisoner's serious illness or injury."[8] Thus, *Estelle* requires Plaintiff to satisfy a two-prong test in order to impose liability under § 1983: i) deliberate indifference on the part of prison officials; and ii) the prisoner's medical needs must be serious.[9] However, the *Estelle* Court has also clarified the standard in that:

> an inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, *a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.* In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.[10]

The "deliberate indifference" prong from *Estelle* is satisfied when the plaintiff alleges that the defendant acted to deny an inmate's reasonable request for medical treatment subjecting the prisoner to undue suffering or if medical treatment is delayed for non-medical reasons.[11] The acts complained of must be accompanied by a "reckless disregard" of or "actual intent" to disregard a serious medical condition.[12] Thus, a defendant's conduct does not constitute a "deliberate indifference" unless it is alleged to occur in conjunction with the requisite mental state. A prisoner's medical need is sufficiently serious if diagnosed by a physician as requiring

---

[6] *Clean Ocean Action v. York*, 57 F.3d 328, 331 (3d Cir. 1995).
[7] *See S & R Corp. v. Jiffy Lube Internat'l, Inc.*, 968 F.2d 371, 374 (3d Cir. 1992).
[8] *Estelle v. Gamble*, 429 U.S. 97, 105 (1976).
[9] *Id.*
[10] *Id.* at 105-06 (citations omitted)(emphasis supplied).
[11] *Monmouth County Correctional Inst. Inmates v. Lanzaro*, 834 F.2d 326, 346-47 (3d Cir. 1987).
[12] *Benson v. Cady*, 761 F.2d 335, 339 (7th Cir. 1985).

treatment or so obvious that a lay person would easily recognize the necessity of a physician's attention.[13]  Furthermore, "'*where the plaintiff has received some care, inadequacy or impropriety of the care that was given will not support an Eighth Amendment claim.*'"[14]  A mere difference of opinion concerning the treatment received by an inmate is not actionable under the Eight Amendment and § 1983.[15]

Not only must plaintiff demonstrate a likelihood of success on the merits, he must also make a showing that, in the absence of an injunction, the prisoner will suffer irreparable harm.[16]

B.   ARGUMENTS

1.   THE PRISONER IS NOT ENTITLED TO INJUNCTIVE RELIEF SINCE IT IS UNLIKELY HE WILL SUCCEED ON THE MERITS OF THIS ACTION AND THE PRISONER WILL NOT SUFFER IRREPARABLE HARM IN THE ABSENCE OF AN INJUNCTION

Plaintiff filed this civil rights Complaint pursuant to the Eighth Amendment and 42 U.S.C. § 1983.  Plaintiff alleges that he is not getting the appropriate medications and/or dosages of medications as prescribed.[17]  It is unlikely that the prisoner will succeed on the merits of this action, since the prisoner has received mental health care and treatment, albeit not the specific medication requested nor, presumably, the "mental health treatment"[18] desired.

The prisoner was transferred to DCC from the HRYCI on November 17, 2005.  On that same date, Dr. Roberta Burns ordered Dilantin 200 mg twice a day, with a Dilantin level to be

---

[13] *Pace v. Fauver*, 479 F. Supp. 456, 458 (D.N.J. 1979), *aff'd*, 649 F.2d 860 (3d Cir. 1981).

[14] *Norris v. Frame*, 585 F.2d 1183, 1186 (3d Cir. 1978) . *See also Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3rd Cir. 1979) ("Courts will 'disavow any attempts to second-guess the propriety or adequacy of a particular course of treatment ... [which] remains a question of sound professional judgment.'")(emphasis supplied).

[15] *Id.*

[16] *SI Handling Sys., Inc. v. Heisley*, 753 F.2d 1244, 1264 (3d Cir. 1985).

[17] For the purposes of this Motion, Defendant concedes that plaintiff may satisfy the "serious" medical condition requirement of *Estelle* with regard to his need for medications and mental health treatment.

[18] Plaintiff alleges lack of "mental health treatment", but it is unclear what mental health treatment, besides medications, that the prisoner seeks.

drawn in two weeks.[19]  A copy of the physician order sheet is attached at Exhibit "A".  Also on November 17, 2005, during the intake procedure, the prisoner was referred to the Mental Health Unit at DCC.  A copy of the Mental health Referral is attached at Exhibit "B".  The disposition of this referral was an appointment with psychiatrist, Dr. Alexander Jacobson, for November 23, 2005.  Id.

On November 20, 2005, the inmate submitted a "sick call slip" for a complaint of "confusion, memery [sic] and hyper".  See sick call request attached at Exhibit "C" .[20]  Dr. Alexander Jacobsen evaluated the prisoner three days later on November 23, 2005.  See Psychiatric Progress Note dated November 23, 2005 at Exhibit "D".

Dr. Jacobson's diagnosis was the Axis I disorders:  "MDD[21] recurrent" and alcohol dependency; no Axis II disorder and per Axis III, a  seizure disorder.  Id.  Dr. Jacobsen ordered Ritalin 20 mg, twice a day, and Prozac 60 mg every morning.  A follow-up with a mental health clinician was planned, and follow-up with a psychiatrist in three months.  Exhibit "C".

The prisoner's MAR is attached which demonstrates Dilantin was administered as ordered by Dr. Burns and Prozac was administered as ordered by Dr. Jacobsen.  Exhibit "E".  However, the Ritalin  is a non-formulary, controlled substance schedule II prescribed for ADHD.  Presumably, because this drug was non-formulary, Dr. Jacobsen had to fill out a non-formulary request form.  Id.

On January 6, 2006 at 1300, a mental health clinician met with the prisoner as part of the inmate's routine mental health treatment.  Exhibit "F".  The *inmate executed a form* entitled "Mental Health Treatment Plan" which calls for individual treatment by clinician at least every

---

[19] Dilantin is an anti-seizure medication.
[20] This is the only sick call request submitted by this inmate since his transfer to DCC.
[21] Mental Disorder Depression.

thirty days, evaluation and treatment by psychiatrist at least every ninety days and medication monitoring by the nursing.  Id.

On January 11, 2006, Dr. Anthony Cannuli, a board-certified psychiatrist, again evaluated the prisoner as part of the inmate's mental health treatment.  Psychiatric Progress Note dated January 11, 2006 at Exhibit "G".  Dr. Cannuli determined that: i) there was no way to confirm a diagnosis of ADHD; ii) there was no way to make a diagnosis of ADHD; and iii) Ritalin was not clinically indicated for the prisoner; and iv) explained to the prisoner the reasons that Ritalin was not being administered and/or prescribed.  Affidavit of Dr. Anthony Cannuli at Exhibit "H".

The prisoner will not succeed on the merits of this action.  The prisoner is getting appropriate mental health treatment, and *has been seen by a psychiatrist on two occasions in the last sixty days and a mental health clinician less than two weeks ago*.  According to the medical records, his medications have been timely administered.  Further, the only sick call slip submitted by this prisoner was on November 20, 2005 which was timely addressed by a psychiatrist.  It is clear that the inmate is not entitled to emergency injunctive relief.

Plaintiff can make no showing that in the absence of an injunction, the prisoner will suffer irreparable harm.  On the contrary, Dr. Cannuli, by Affidavit, has testified that there is no danger of any medical harm to the prisoner by the discontinuation and/or non-administration of Ritalin.  Exhibit "H".  Dr. Cannuli, by Affidavit, has testified that there is no danger of medical/psychological harm to the prisoner by the administration of medications as presently prescribed.  Dr. Cannuli, by Affidavit, has testified that there is no danger of medical/psychological harm by the inmate's mental health treatment plan of monthly sessions

with the mental health clinician and follow-up with a psychiatrist every ninety days, or as deemed clinically necessary.

It is clear that the inmate can not demonstrate irreparable harm in the absence of an injunction.

    2.    PLAINTIFFS COMPLAINT SHOULD BE DISMISSED PURSUANT TO FED. R. CIV. P 12 (b)(6)

Plaintiffs' claims lack an arguable legal basis and should be dismissed with prejudice. A claim may be dismissed because it fails to allege sufficient facts to support a cognizable legal claim.[22] Furthermore, even a *pro se* litigant must plead sufficient facts to sustain a legal claim.[23] A motion to dismiss for failure to state a claim upon which relief can be granted should be granted in the event that it is "beyond a doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[24]

In order to be liable in a civil rights action, a defendant must have personal involvement in the alleged wrongs.[25] "Personal involvement" may be demonstrated through "allegations of personal direction or of actual knowledge and acquiescence." These allegations, however, must be made with appropriate particularity.[26]

Liability may not be imposed on supervisory personnel for the actions of their employees under a theory of *respondeat superior*. When the named defendant holds a supervisory position, the causal link between the defendant and the claimed constitutional violation must be

---

[22] Federal Rule of Civil Procedure 12(b)(6).
[23] *See Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996).
[24] *Conley v. Gibson*, 355 U.S. 41, 45-6 (1957).
[25] *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (1988)(citations omitted).
[26] *Id.*

specifically alleged.[27] To state a claim for relief for supervisory liability, plaintiff must allege facts indicating that the defendant either: i) personally participated in the alleged deprivation of constitutional rights; ii) knew of the violations and failed to prevent them; or iii) promulgated or "implemented a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation."[28]

Plaintiff's Complaint under 42 U.S.C. § 1983 names Chris Malaney as a defendant, however it fails to set forth any specific allegations of personal involvement in the alleged violation of plaintiff's civil rights.  There are no facts linking Ms. Malaney to any alleged acts or omissions, and thus there is no basis upon which to impose liability under a theory of supervisory liability.  Specifically, according to the Complaint, Ms. Malaney is named as a Defendant, "by virtue of [her] failure to provide access to adequate medical staff, treatment and medications." D.I. 2 at § IV, ¶ 2.  This allegation is conclusory and insufficient as a matter of law to sustain a claim. The allegation does not state with any particularity how the prisoner was denied access to adequate medical staff by Ms. Malaney, nor what treatment and/or medications were denied by Ms. Malaney.[29]  The prisoner even fails to claim that Ms. Malaney had any knowledge of the inmate's medical condition, let alone that she was deliberately indifferent to it. Moreover, as *Estelle* explains, this is not a cognizable claim under the Eighth Amendment since a "*mere difference of opinion between the prison's medical staff and the inmate as to the*

---

[27] *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978), *cert. denied*, 442 U.S. 941 (1979).
[28] *Hansen v. Black,* 885 F.2d 642, 646 (9th Cir. 1989)(internal citations omitted).
[29] Ms. Malaney is not a medical provider; she is not medical doctor nor or a nurse practitioner.  Ms. Malaney has no authority to prescribe, or discontinue, any drug, nor does she have the authority to prescribe, or discontinue, "mental health treatment".

*diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment.*"[30]  The claims against Ms. Malaney should be dismissed with prejudice.

To the extent that claims are alleged against CMS in this matter, CMS may only be held liable for a policy or custom that demonstrates deliberate indifference to Plaintiff's serious medical needs.[31] Plaintiff has failed to allege any unconstitutional policy or custom against CMS, nor has he alleged that the execution of such policy or custom caused the constitutional tort at issue. To the extent that Plaintiff names CMS as a defendant based on the activities of its employees, *respondeat superior* is not a viable theory of liability under 42 U.S.C. § 1983.[32] Because the plaintiff has failed to state a claim against it, CMS' Motion to Dismiss should be granted.

To the extent that plaintiff does state a claim against Christine Malaney and CMS, any contentions of "deliberate indifference to a serious medical need" lack factual support.  Plaintiff seeks receipt "of all medications prescribed and/or which are effective vis a vis my mental health problems."  D.I. 2 at § V, ¶ 1.  According to the Affidavit of Dr.Cannuli,  the prisoner is receiving appropriate medications and treatment for his mental health issues, despite his contentions to the contrary.   Indeed, prison authorities should be afforded considerable latitude in the diagnosis and treatment of prisoners.[33]

C.   CONCLUSION

Based upon the foregoing, Plaintiff's Motion for Injunctive Relief should be denied, and all claims against Defendants, Chris Malaney and Correctional Medical Services, Inc., should be

---

[30] *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980); *Fitzgerald v. Septer*, 1998 U.S. Dist. LEXIS 23397, C.A. No. 97-663-JJF at 2 (D.Del. July 27, 1998) (holding that claim alleging mere dissatisfaction with medical care administered to prisoner is insufficient to support cognizable claim under 1983); *Johnstone v. United States*, 980 F.Supp. 148, 153 (E.D. Pa. 1997).

[31] *Miller v. Correctional Medical Systems, Inc.,* 802 F. Supp. 1126 (D. Del. 1992), *citing Monell v. Dept. of Social Services*, 436 U.S. 658 (1978).

[32] *Id.*

[33] *See Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979).

dismissed pursuant to Federal Rule of Civil Procedure 12 (b)(6) for failure to state any claim upon which relief can be granted. Accordingly, Defendants, Chris Malaney and Correctional Medical Services, Inc., request that the Court deny the inmate's request for injunctive relief and grant the Motion to Dismiss filed contemporaneously herewith.

        MARSHALL, DENNEHEY, WARNER,
        COLEMAN & GOGGIN


BY: */s/ Kevin J. Connors, Esq., Id. No. 2135*
    Kevin J. Connors, Esquire – I.D. # 2135
    1220 N. Market Street, 5th Floor
    P.O. Box 8888
    Wilmington, DE  19899-8888
    (302) 552-4302
    Attorney for Defendants,
    Correctional Medical Services, Inc. and
    Chris Malaney

Dated: January 20, 2006

CERTIFICATION OF SERVICE

I hereby certify that I have electronically filed MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE RESPONSE OF DEFENDANTS, CHRIS MALANEY AND CORRECTIONAL MEDICAL SERVICES, INC., IN OPPOSITION TO PLAINTIFF'S MOTION FOR INJUNCTIVE RELIEF AND DEFENDANTS' CROSS-MOTION TO DISMISS PLAINTIFF'S COMPLAINT with the Clerk of the Court using CM/ECF which will send notification to the following:  Eileen Kelly, Deputy Attorney General.  I hereby certify that on this date I have mailed by United States Postal Service the document to the following non-registered participants:  Stanley Taylor and Mr. Thomas Carroll.  I hereby certify that on this date I have mailed by United States Postal Service the document except those documents which were originally filed under seal with the court to the following non-registered participants: Leonard K. Baylis.

MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN

BY: */s/ Kevin J. Connors, Esq., Id. No. 2135*
Kevin J. Connors, Esquire – I.D. # 2135
1220 N. Market Street, 5th Floor
P.O. Box 8888
Wilmington, DE  19899-8888
(302) 552-4302
Attorney for Defendants,
Correctional Medical Services, Inc. and
Chris Malaney

Dated: January 20, 2006

\15_A\LIAB\LAWOLHAR\LLPG\328833\LAWOLHAR\13252\15000