IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **LEONARD K. BAYLIS**<br><br>**Plaintiff**<br><br>v.<br><br>**STANLEY TAYLOR, et al**<br><br>**Defendant(s)** | Civ. No: 06-11-SLR<br><br>JURY OF 12 DEMANDED |

**MEMORANDUM OF POINTS AND AUTHORITIES OF DEFENDANTS, CHRISTINE MALANEY, DR. ANTHONY CANNULI, AND CHARLES BENTON, IN SUPPORT OF THEIR MOTION TO DISMISS**

Defendants, Christine Malaney, Anthony Cannuli, M.D., and Charles Benton, through their undersigned counsel, hereby respectfully move this Honorable Court to enter the attached Order, dismissing plaintiff's Complaint with prejudice and, in support thereof, aver as follows:

**A.     Statement of Facts and Procedural Posture**

CMS is a private corporation that has provided medical care for inmates. Dr. Cannuli is a board certified psychiatrist employed by Correction Medical Services who has treated, and continues to treat the plaintiff. Charles Benton is a mental health therapist employed by Correctional Medical Services who has treated the plaintiff.

Plaintiff, Leonard K. Baylis, was incarcerated in the Delaware Correction Center when he filed a Complaint in this matter on January 5, 2006, pursuant to 42 U.S.C. § 1983. D.I. 2. Among others, Chris Malaney, the Health Care Administrator, was named as a defendant. D.I. 2. In his initial complaint, plaintiff alleged he was not receiving the proper medical care and treatment for mental health problems he alleged. D.I. 1. In a Memorandum Order, D.I. 2 , this Court ordered that Chris Malaney and the Attorney General for the State of Delaware to respond to plaintiff's Motion for Injunctive Relief on the issues of non-administration of medication and mental health treatment. After a thorough review of the medical records and reports submitted

by Ms. Malaney in opposition to the plaintiff's Motion, including an affidavit by Dr. Anthony Cannuli, D.I. 3, plaintiff's Motion was denied. D.I. 6. On or about February 27, 2006, plaintiff's Complaint was dismissed without prejudice for failure to state a claim upon which relief may be granted, with leave to amend. D.I. 23.

On or about March 16, 2006, plaintiff filed a first Amended Complaint naming, among others, Chris Malaney, Dr. Anthony Cannuli, Bruce Doe and Jane Doe. D.I. 25. By letter dated April 5, 2006, the plaintiff identified "Bruce Doe" as Charles Benton and "Jane Doe" as Georgianna Mickens. D.I. 27.

In his first Amended Complaint, plaintiff has, again, asserted a claim against Chris Malaney in her role as a supervisor, alleging she is responsible for operating a medical department that is understaffed, unorganized and unprepared to meet the needs of the prison population. D.I. 25.

Plaintiff now alleges Dr. Cannuli fails to treat his mental illness, Attention Deficit Disorder ("ADD"). D.I. 25. Specifically, plaintiff names Dr. Cannuli "[f]or his not prescribing either 1st line or 2nd line (alternative) medication for [plaintiff's] ADD disorder [sic]. And for [Dr. Cannuli] rescinding [plaintiff's] regular ADD medication." D.I. 25. Plaintiff alleges without such medication, his ADD has caused him frustration, anxiety, anger and confusion to the extent he cannot control his actions and poses a threat to himself and others. D.I. 25.

Additionally, plaintiff has asserted that Mr. Benton "has repeatedly advised he will have [plaintiff] considered for a special needs unit and having me revisit the psychiatrist for a 2nd line medication and therapy for ADD. Bruce has promised for these things to take place has [sic] come and gone, without any action at all; and, so far my 'therapy' has consisted of Bruce advising me to 'drink alot [sic] of coffee." D.I. 25.

B.   **Standard of Review**

A claim may be dismissed because it fails to allege sufficient facts to support a cognizable legal claim.[1] The Complaint "must provide the defendants with fair notice of what plaintiff's claim is and the grounds upon which it rests."[2] Moreover, even a *pro se* litigant must plead sufficient facts to sustain a legal claim.[3] A motion to dismiss for failure to state a claim upon which relief can be granted should be awarded in the event that it is "beyond a doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[4]

C.   **Legal Arguments**

   1.   **Plaintiff's Complaint against Chris Malaney must be dismissed pursuant to Fed. Ct. Civ. R. 12(b)(6).**

In order to be liable in a civil rights action, a defendant must have personal involvement in the alleged wrongs.[5] "Personal involvement" may be demonstrated through "allegations of personal direction or of actual knowledge and acquiescence."[6] These allegations, however, must be made with appropriate particularity.[7]

Liability may not be imposed on supervisory personnel for the actions of their employees under a theory of *respondeat superior*. When the named defendant holds a supervisory position, the causal link between such defendant and claimed constitutional violation must be specifically alleged.[8] To state a claim based upon supervisory liability, plaintiff must allege facts indicating said defendant either:  i)  personally participated in the alleged deprivation of constitutional rights; ii)  knew of the violations and failed to prevent them; or iii)  promulgated or

---

[1] Fed. R. Civ. P. 12(b)(6).
[2] *United States v. City of Philadelphia*, 644 F.2d 187, 204 (3d Cir. 1980) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).
[3] *See Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996).
[4] *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).
[5] *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (1988)(citations omitted).
[6] *Id.*
[7] *Id.*
[8] *See Fayle v. Stapley,* 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld,* 589 F.2d 438, 441 (9th Cir. 1978), *cert. denied,* 442 U.S. 941 (1979).

"implemented a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation."[9]

Plaintiff's first amended Complaint under 42 U.S.C. § 1983 names Chris Malaney as a defendant but fails to set forth any specific allegations of personal involvement in violating his civil rights. The crux of plaintiff's Complaint is the failure of the physicians at DCC to give the plaintiff the particular medication he desires, and the mental health treatment he requests. Again, there are no facts relating personal involvement of Ms. Malaney to any acts or omissions causing harm to plaintiff, and, thus, no basis upon which to impose liability.[10] Moreover, there is nothing in the Complaint to indicate that Ms. Malaney was "the driving force [behind]" plaintiff's alleged constitutional violations. Ms. Malaney is named as a defendant in the amended Complaint "for allowing to be in operation or causing to be in operation, or actually operating a medical department that is understaffed, unorganized and unprepared to meet the needs of the prison population. This is where individual mental health and other treatment is cursory at best and, in my case, negligent." D.I. 25. This allegation is conclusory and insufficient as a matter of law to sustain a valid cause of action against Ms. Malaney pursuant to 42 U.S.C. § 1983.

The allegations do not state with any particularity how the prisoner was denied access to medical treatment by Ms. Malaney, nor what treatment or medications were personally denied by Ms. Malaney. The prisoner further fails to allege Ms. Malaney had any knowledge of his medical condition, let alone that she was deliberately indifferent to it. Moreover, plaintiff makes assertions based upon the treating physicians' decisions with regard to medical care, as opposed to not receiving medical care at all. As *Estelle* explains, this is not a cognizable claim under the

---

[9] *Hansen v. Black,* 885 F.2d 642, 646 (9th Cir. 1989)(internal citations omitted).
[10] Ms. Malaney is not a medical provider; she is not medical doctor nor or a nurse practitioner. Ms. Malaney has no authority to prescribe, or discontinue, any drug, nor does she have the authority to prescribe, or discontinue, "mental health treatment".

Eighth Amendment since a "*mere difference of opinion between the **prison's** medical staff and the inmate as to the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment*."[11]  The claims against Ms. Malaney should be dismissed with prejudice.

To the extent viable constitutional claims are alleged against Ms. Malaney, Ms. Malaney may only be held liable for a policy or custom that demonstrates deliberate indifference to Plaintiff's serious medical needs.[12]  "Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy or edict."[13]  "Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law."[14]  Plaintiff has failed to allege any unconstitutional policy or custom against Ms. Malaney, nor has he alleged that the execution of such policy or custom caused an alleged constitutional violation.

To the extent Ms. Malaney is named as a defendant based upon the activities of other employees, *respondeat superior* is not a viable theory of liability under 42 U.S.C. § 1983.[15]  Because the plaintiff has failed to state a claim against Ms. Malaney, the Motion to Dismiss as it relates to Ms. Malaney should be granted.

---

[11] *Ramos v. Lamm,* 639 F.2d 559, 575 (10th Cir. 1980); *Fitzgerald v. Septer*, 1998 U.S. Dist. LEXIS 23397, C.A. No. 97-663-JJF at 2 (D.Del. July 27, 1998) (holding that claim alleging mere dissatisfaction with medical care administered to prisoner is insufficient to support cognizable claim under 1983) Attached hereto as Exhibit "A"; *Johnstone v. United States*, 980 F.Supp. 148, 153 (E.D. Pa. 1997).

[12] *Miller v. Correctional Medical Systems, Inc.,* 802 F. Supp. 1126 (D. Del. 1992), *citing Monell v. Dept. of Social Services*, 436 U.S. 658 (1978).

[13] *Whalen v. Correctional Medical Services*, 2003 U.S. Dist. LEXIS 21334 (*citing Miller*, 802 F. Supp. at 1132).  Attached hereto as Exhibit "B".

[14] *Id.*

[15] *Id.*

### 2. Plaintiff's Complaint against Dr. Anthony Cannuli and Charles Benton should be dismissed pursuant to Fed. Ct. Civ. R. 12 (b) (6)

In his first Amended Complaint, plaintiff alleges Dr. Cannuli failed to treat his mental illness, Attention Deficit Disorder ("ADD"). D.I. 25. Specifically, plaintiff names Dr. Cannuli "[f]or his not prescribing either 1st line or 2nd line (alternative) medication for [plaintiff's] ADD disorder [sic]. And for [Dr. Cannuli] rescinding [plaintiff's] regular ADD medication." D.I. 25. Plaintiff alleges, without such medication, his ADD has caused him frustration, anxiety, anger and confusion to the extent he cannot control his actions and poses a threat to himself and others. D.I. 25.

In the context of medical care, an act of a prison official only becomes a constitutional violation when it results from the "deliberate indifference to a prisoner's serious illness or injury."[16] Thus, *Estelle* requires Plaintiff to satisfy a two-prong test in order to impose liability under § 1983: i) deliberate indifference on the part of prison officials; and ii) the prisoner's medical needs must be serious.[17] However, the *Estelle* Court has also clarified this standard in that:

> an inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.[18]

The "deliberate indifference" prong from *Estelle* is satisfied when the plaintiff alleges that the defendant acted to *deny* an inmate's reasonable request for medical treatment subjecting

---

[16] *Estelle v. Gamble*, 429 U.S. 97, 105 (1976).
[17] *Id.* A prisoner's medical need is sufficiently serious if diagnosed by a physician as requiring treatment or so obvious that a lay person would easily recognize the necessity of a physician's attention. *Pace v. Fauver*, 479 F. Supp. 456, 458 (D.N.J. 1979), *aff'd*, 649 F.2d 860 (3d Cir. 1981). For the purpose of this Motion only, defendants cencede a "serious medical need".
[18] *Id.* at 105-06 (citations omitted)(emphasis supplied).

the prisoner to undue suffering or if medical treatment is delayed for non-medical reasons.[19] The acts complained of must be accompanied by a "reckless disregard" of or "actual intent" to disregard a serious medical condition.[20] Thus, a defendant's conduct does not constitute a "deliberate indifference" unless it is alleged to occur in conjunction with the requisite mental state. Furthermore, "'*where the plaintiff has received some care, inadequacy or impropriety of the care that was given will not support an Eighth Amendment claim.*'"[21] A mere difference of opinion concerning the treatment received by an inmate is not actionable under the Eight Amendment and § 1983.[22]

In the seminal case of *Estelle*, the Supreme Court was considering a Fed. R. Civ. P. 12 (b)(6) motion on appeal. By way of factual background, the doctors diagnosed the prisoner's injury as a lower back strain and treated it with bed rest, muscle relaxants, and pain relievers. Plaintiff-prisoner contended that more should have been done by way of diagnosis and treatment, and suggested a number of options that were not pursued. The Court of Appeals agreed with the prisoner-plaintiff, stating: "Certainly an X-ray of [prisoner-plaintiff's] lower back might have been in order and other tests conducted that would have led to appropriate diagnosis and treatment for the daily pain and suffering he was experiencing."[23] The Supreme Court found error in this portion of the holding by the Court of Appeals:

> But the question whether an X-ray - or additional diagnostic techniques or forms of treatment - is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice, and as such the proper forum is the state court under the Texas Tort Claims Act…The Court of

---

[19] *Monmouth County Correctional Inst. Inmates v. Lanzaro*, 834 F.2d 326, 346-47 (3d Cir. 1987).
[20] *Benson v. Cady*, 761 F.2d 335, 339 (7th Cir. 1985).
[21] *Norris v. Frame*, 585 F.2d 1183, 1186 (3d Cir. 1978) . *See also Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3rd Cir. 1979) ("Courts will 'disavow any attempts to second-guess the propriety or adequacy of a particular course of treatment ... [which] remains a question of sound professional judgment.'")(citations omitted)(emphasis supplied).
[22] *Id.*
[23] 516 F.2d at 241.

Appeals was in error in holding that the alleged insufficiency of the medical treatment required reversal and remand.[24]

Thus, matters of medical decision or judgment *do not* constitute cruel and unusual punishment for the purposes of a § 1983 action.

In *Bowring v. Godwin*, the plaintiff-prisoner requested psychological diagnosis and treatment, and the Court of Appeals recognized that inmates are entitled to psychological or psychiatric treatment in limited circumstances.[25]  The *Bowring* Court, however, made a distinction between entitlement to treatment and matters of medical decision or judgment:

> [i]n so holding, we disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment.  Along with all other aspects of health care, this remains a question of sound professional judgment. The courts will not intervene upon allegations of mere negligence, mistake or difference of opinion.[26]

    a.    **Plaintiff's allegations against Dr. Cannuli do not state a claim under 42 U.S.C. § 1983**

In the instant lawsuit, plaintiff-prisoner does not contend that he fails to get his duly prescribed medications for his "mental disorder".  Nor does plaintiff-prisoner contend that he is "denied access" to a board-certified psychiatrist, Dr. Cannuli.  Nor does plaintiff-prisoner contend that he fails to get counseling on a regular basis.  Plaintiff-prisoner does contend, however, that Dr. Cannuli rescinded and/or failed to order a medication that the plaintiff-prisoner deems appropriate.  These allegations against Dr. Cannuli, just like the allegations

---

[24] *Estelle v. Gamble*, 429 U.S. 97, 107 (1976).
[25] *Bowring v. Godwin*, 551 F.2d 44 (4th Cir. 1977).  In addressing the entitlement to such mental health care, the *Bowring* court concluded that such entitlement attached "if a physician or other health care provider, exercising ordinary skill and care at the time of observation, concludes with reasonable medical certainty (1) that the prisoner's symptoms evidence a serious disease or injury; (2) that such disease or injury is curable or may be substantially alleviated; and (3) that the potential for harm to the prisoner by reason of delay or the denial of care would be substantial." *Id.* at 46.  The Court further held that, "The right to treatment is, of course, limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical necessity and not simply that which may be considered merely desirable." *Id.*
[26] *Id.* at 46.

against the physician in *Estelle*, and the distinction recognized in *Bowring*, fit squarely under the umbrella of "medical judgment". Just as the failure to order an X-ray, requested by the inmate, and deemed necessary by the inmate, did not constitute cruel and unusual punishment under *Estelle*, it cannot be said that the failure of the board-certified psychiatrist to order a particular medication, requested by the inmate, and deemed necessary by the inmate, constitutes cruel and unusual punishment. Just as in *Bowring*, this Court should disavow any attempt to second-guess the propriety or adequacy of a board certified psychiatrist's particular course of treatment. Plaintiff's allegations do not, and can not, state a cognizeable claim under § 1983.

The plaintiff further contends that "reasonable dosage of ADD medication does no[t] pose a danger." D.I. 25. Such a contention is, at best, a mere difference in opinion with regards to appropriate medical treatment. This is not a cognizable claim under the Eighth Amendment since a "mere difference of opinion between the prison's medical staff and the inmate as to the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment."[27] The plaintiff does not show that Dr. Cannuli displayed deliberate indifference, or reckless disregard, to a serious medical need. Indeed, prison authorities should be afforded considerable latitude in the diagnosis and treatment of prisoners.[28] Accordingly, the motion to dismiss should be granted as it relates to Dr. Cannuli.

      **b.**      **Plaintiff's allegations against Mr. Benton do not state a claim under 42 U.S.C. § 1983**

Plaintiff has asserted that Mr. Benton, a counselor at DCC, "has repeatedly advised he will have [plaintiff] considered for a special needs unit and having me revisit the psychiatrist for a 2nd line medication and therapy for ADD. Bruce has promised for these things to take place has

---

[27] *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980); *Fitzgerald v. Septer*, 1998 U.S. Dist. LEXIS 23397, C.A. No. 97-663-JJF at 2 (D.Del. July 27, 1998) (holding that claim alleging mere dissatisfaction with medical care administered to prisoner is insufficient to support cognizable claim under 1983); *Johnstone v. United States,* 980 F.Supp. 148, 153 (E.D. Pa. 1997).

[28] *See Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979).

[sic] come and gone, without any action at all; and, so far my 'therapy' has consisted of Bruce advising me to 'drink alot [sic] of coffee." D.I. 25.

Plaintiff claims that Mr. Benton broke his "promise" to plaintiff since he has not been moved to a "special needs" unit. However, no where is it alleged that Mr. Benton failed to have plaintiff *considered* for the special needs unit. In fact, upon information and belief, plaintiff was moved to the Special Needs Unit ("SNU") on or about June 12, 2006, upon approval by the Multi-disciplinary team. D.I. 44. Moreover, nowhere is it alleged that Mr. Benton determines who will be placed in the SNU.

Plaintiff claims that Mr. Benton promised referral to the psychiatrist for 2nd line medication for his treatment of ADD. Mr. Benton is a counselor employed at DCC, and does not and cannot prescribe medications and/or ADD treatment. Ultimately, the physician, in his medical judgment, determines type of medications and treatment an inmate will receive. Through the allegations against Dr. Cannuli, the psychiatrist, plaintiff implicitly concedes that, in fact, he was referred to the psychiatrist as "promised" by Mr. Benton, although plaintiff was ultimately dissatisfied with Dr. Cannuli's medical treatment.

The allegations against Mr. Benton are not cognizable claims under the Eighth Amendment since a "mere difference of opinion between the prison's medical staff and the inmate as to the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment."[29] Plaintiff's allegations against Mr. Benton should be dismissed.

---

[29] *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980); *Fitzgerald v. Septer*, 1998 U.S. Dist. LEXIS 23397, C.A. No. 97-663-JJF at 2 (D.Del. July 27, 1998) (holding that claim alleging mere dissatisfaction with medical care administered to prisoner is insufficient to support cognizable claim under 1983); *Johnstone v. United States,* 980 F.Supp. 148, 153 (E.D. Pa. 1997).

   **3. Plaintiff's Complaint against Chris Malaney, Dr. Anthony Cannuli, and Charles Benton, must be dismissed pursuant to Fed. Ct. Civ. R.12 (b) (6) because the plaintiff has failed to exhaust his administrative remedies.**

The Prison Litigation Reform Act of 1996 mandates a prisoner exhaust his administrative remedies prior to bringing an action pursuant to Section 1983.[30]  42 U.S.C. §1997e (a) provides:

> No action shall be brought with respect to prison conditions under Section 1983 of this title or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available to him are exhausted.

"Prison conditions" have been defined to include the environment in which the prisoners live, the physical conditions of that environment and the nature of the services provided therein.[31]

The Delaware Department of Corrections has established administrative procedures that an inmate must follow to file a medical grievance.[32]  An inmate must file a grievance with the Inmate Grievance Chairperson (IGC) who then forwards it to the medical staff for review.  If action needs to be taken, the medical staff is required to attempt an informal resolution of the grievance with the inmate.  If the grievance cannot be resolved informally, the grievance is forwarded to the Medical Grievance Committee to conduct a hearing.  If the medical grievance hearing decision does not satisfy the inmate, the inmate may complete a Medical Grievance Committee Appeal Statement which is then submitted to the Bureau Grievance Officer.[33]  The Bureau Grievance Officer will recommend a course of action to the Bureau Chief of Prisons, who renders the final decision.

Plaintiff complains of prison conditions which under 42 U.S.C. §1997e (a) requires him to exhaust the administrative remedies available to him.  While plaintiff to have made/filed/sent

---

[30] *Nyhuis v. Reno,* 204 F.3d 65, 67 (3d Cir. 2000); *see also Booth v. Churner,* 206 F.3d 289, 294-95 (3d Cir. 2000) *cert. granted,* No. 99-1964, 531 U.S. 956 (Oct. 30, 2000) (§1997e (a) is applicable to all inmate claims except those challenging the fact or duration of confinement).
[31] *Booth,* 206 F.3d at 291.
[32] *See* Inmate Procedure Grievance attached hereto as Exhibit "C".
[33] *See* Exhibit "C", at 7.

letters, grievances and verbal requests, plaintiff never exhausted his administrative remedies made available by the Delaware Department of Corrections as evidenced by his own admission in his first Amended Complaint. In his first Amended Complaint, plaintiff claims to have exhausted his available administrative remedies, while at the same time stating that he received "no actual response or solution within [a] reasonable time." D.I. 25 at § II C.

42 U.S.C. §1997e (a) should be applied without exception to promote the policy behind the exhaustion requirement, which is to allow the Department of Corrections an opportunity to discover and correct mistakes and conserve judicial resources.[34] At the time this action was filed, several procedural steps remained under the Department of Corrections Inmate Grievance Procedure that were not completed, thereby obviating any opportunity to discover and correct any alleged mistakes and wasting judicial resources. As exemplified by these proceedings where plaintiff's complaints have already been addressed and, presumably resolved, D.I. 44, the need to exhaust administrative remedies is a necessary requirement to avoid wasting costly judicial resources. Therefore, plaintiff's Complaint against Anthony Cannuli, M.D., Chris Malaney, and Charles Benton,, must be dismissed as he has failed to exhaust his administrative remedies as mandated by the Prison Litigation Reform Act of 1996.

### D.     Conclusion

Based upon the foregoing, all claims against Defendants, Chris Malaney, Dr. Anthony Cannuli and Charles Benton, should be dismissed pursuant to Federal Rule of Civil Procedure 12 (b)(6) for failure to state any claim upon which relief can be granted. Accordingly, Defendants, Chris Malaney, Dr. Anthony Cannuli and Charles Benton respectfully request that the Motion to Dismiss filed contemporaneously herewith be granted, with prejudice.

---

[34] *O'Neil v. Kearney, et al.*, C.A. No. 99-849-SLR,  Memorandum Order (Robinson, J. November 6, 2000) (*citing Nyhuis v. Reno*, 204 F.3d 65, 75 (3d Cir. 2000)).  Attached hereto as Exhibit "D".

                                                MARSHALL, DENNEHEY, WARNER,
COLEMAN AND GOGGIN

BY:   /s/Kevin J. Connors
        KEVIN J. CONNORS, ESQUIRE,(DE ID # 2135)
        LORENZA A. WOLHAR, (DE ID # 3971)
        1220 N. Market Street, 5th Floor
        P.O. Box 130
        Wilmington, DE  19899-0130
        (302) 552-4302
        Attorneys for Defendants, Christine Malaney
        Dr. Anthony Cannuli, M.D. and Charles Benton

Dated: June 26, 2006

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LEONARD K. BAYLIS | : | |
| | : | |
| **Plaintiff** | : | |
| | : | Civ. No: 06-11-SLR |
| v. | : | |
| | : | JURY OF 12 DEMANDED |
| STANLEY TAYLOR, et al | : | |
| | : | |
| **Defendant(s)** | : | |

### CERTIFICATE OF SERVICE

      I hereby certify that on June 26, 2006, I electronically filed the Memorandum of Points and Authorities of Defendants, Christine Malaney, Dr. Anthony Cannuli and Charles Benton, In Support of their Motion to Dismiss with the Clerk of Court using CM/ECF, which will send notification of such filing to the following:

Eileen Kelly, Esquire
Department of Justice
820 N. French Street, 6th Floor
Wilmington, DE  19801

      I hereby certify that on June 26, 2006, I have mailed by United States Postal Service, the Memorandum of Points and Authorities of Defendants, Christine Malaney, Dr. Anthony Cannuli and Charles Benton, In Support of their Motion to Dismiss to the following non-registered participant:

Leonard K. Baylis
SBI00100231
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE  19977

                                         MARSHALL, DENNEHEY, WARNER,
                                         COLEMAN AND GOGGIN

                BY:    /s/Kevin J. Connors
                         KEVIN J. CONNORS, ESQUIRE,(DE ID # 2135)
                         LORENZA A. WOLHAR, (DE ID # 3971)
                         1220 N. Market Street, 5th Floor
                         P.O. Box 130
                         Wilmington, DE  19899-0130
                         (302) 552-4302
                         Attorneys for Defendants, Christine Malaney,
                         Dr. Anthony Cannuli, M.D. and Charles Benton