IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LEONARD K. BAYLIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 06-011-SLR |
| | ) |
| STAN TAYLOR, CHRIS MALANEY, | ) |
| DR. ANTHONY CANNOLI, CHARLES | ) |
| BENTON, and GEORGIANA MEEKENS, | ) |
| | ) |
| Defendants. | ) |

Leonard K. Balis, pro se Plaintiff.

Eileen Kelly, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for Stan Taylor.

Kevin J. Connors, Esquire, of Marshall, Dennehey, Warner, Coleman & Goggin, Wilmington, Delaware. Counsel for Defendants Chris Malaney, Dr. Anthony Cannoli, Charles Benton, and Georgiana Meekens.

**MEMORANDUM OPINION**

Dated: February 23, 2007
Wilmington, Delaware

ROBINSON, Chief Judge

## I. INTRODUCTION

Presently before the court are motions to dismiss filed by defendants Christine Malaney ("Malaney"), Dr. Anthony Cannuli[1] ("Dr. Cannuli"), Charles Benton ("Benton"), and Georgianna Mickens[2] ("Mickens").[3]  (D.I. 52, 65)  Responses and replies were filed by plaintiff and defendants.  (D.I. 55, 58, 60, 67, 68, 69)  For the reasons set forth below, the court will grant the motions to dismiss of defendants Malaney and Dr. Cannuli and will deny the motions to dismiss filed by Benton and Mickens.

## II. BACKGROUND

Plaintiff, an inmate at the Delaware Correctional Center ("DCC"), filed this civil rights complaint pursuant to 42 U.S.C. § 1983.  (D.I. 2)  His original complaint was dismissed with leave to amend.  (D.I. 25)  The amended complaint alleges that on November 23, 2005, Dr. Alexander Jacobson continued to prescribe plaintiff Prozac, Ritalin, and Dilantin for treatment of plaintiff's mental health disorder.  Plaintiff alleges that the medications helped him to think and act normally.  He alleges that on January 11, 2006, replacement doctor, Dr. Cannuli,

---

[1] Plaintiff misspells the name as "Cannoli."

[2] Plaintiff misspells the name as "Georgiana Meekens."

[3] Former Commissioner Stanley Taylor ("Taylor") has not filed a motion to dismiss.

"rescinded" the Ritalin stating that Correctional Medical Systems ("CMS") does not recognize the mental disorder ADD.[4] Plaintiff alleges that Dr. Cannuli did not prescribe an alternative medication or evaluate, test, or measure the extent of his illness and that, without treatment, the illness is causing changes in plaintiff's behavior and thinking. Plaintiff alleges that Dr. Cannuli was deliberately indifferent to his serious medical needs by not prescribing medication for his ADD disorder and by rescinding his regular ADD medications.

Plaintiff alleges that he was repeatedly advised by psychologist Benton that he would be considered for a special needs unit and that plaintiff would "revisit" the psychiatrist for ADD medication and therapy. Plaintiff alleges that no action has taken place. Plaintiff alleges that Benton was deliberately indifferent to his serious medical needs because plaintiff has not received proper mental health treatment.

Plaintiff alleges that Taylor and Malaney allow the medical department to be understaffed, unorganized, and unprepared to meet the needs of the prison population. He further alleges that the mental health unit is overburdened and, in turn, denies him adequate mental health treatment. Plaintiff also alleges that

---

[4]Attention deficit disorder.

-2-

the medical grievance procedure is untimely and haphazard and the staff fails to recognize emergency mental health situations.

Finally, plaintiff, who has no teeth, alleges that he has been requesting dental care since March 2005 but that, when he appeared for treatment on November 29, 2005, Mickens refused to allow the work to go forward. Plaintiff alleges she told him, "you might have to wait another year for dental work."

Plaintiff seeks mental health and dental treatment, the administration of effective medications, and appropriate housing where mental health therapy is available on a regular basis.

## III. DISCUSSION

### A. Standard of Review

Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). The purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). To that end, the court assumes that all factual allegations in plaintiff's pleading are true, and draws all reasonable factual inferences in the light most favorable to plaintiff. Amiot v. Kemper Ins. Co., 122 Fed. Appx. 577, 579 (3d Cir. 2004). However, the court should reject

"unsupported allegations," "bald assertions," or "legal conclusions." Id.

A Rule 12(b)(6) motion should be granted to dismiss a pro se complaint only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Estelle v. Gamble, 429 U.S. 97, 106 (1976) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). Because plaintiff proceeds pro se, the court liberally construes the amended complaint. Haines v. Kerner, 404 U.S. 519, 520 1972).

Defendants Malaney, Dr. Cannuli, Benton, and Mickens move for dismissal on the basis that the amended complaint fails to state a claim upon which relief may be granted. More particularly, they contend that the amended complaint does not allege the requisite personal involvement for § 1983 liability, that liability under § 1983 may not be imposed under a theory of respondeat superior, and that the facts in the complaint do not allege that Dr. Cannuli, Benton, and Mickens were deliberately indifferent to a serious medical need. The defendants also contend that dismissal is appropriate because plaintiff has failed to exhaust his administrative remedies.

The court notes that both motions to dismiss argue facts that are not part of the record. Said argument is better

reserved for a summary judgment motion, with supporting documents.

**B.   Administrative Remedies**

Moving defendants argue that plaintiff failed to exhaust his administrative remedies as is required under 42 U.S.C. § 1997e(a) and, therefore, the amended complaint must be dismissed. Plaintiff responds that he has exhausted administrative remedies and provides exhibits in support of his position. (D.I. 55)

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); see Porter v. Nussle, 534 U.S. 516, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."). Under § 1997e(a) "an inmate must exhaust [administrative remedies] irrespective of the forms of relief sought and offered through administrative avenues." Booth v. Churner, 532 U.S. 731, 741 n.6 (2001). The exhaustion requirement is absolute, absent circumstances where no administrative remedy is available. See Spruill v. Gillis, 372 F.3d 218, 227-28 (3d Cir. 2004); Nyhuis v. Reno, 204 F.3d 65, 67

(3d. Cir. 2000); but see Freeman v. Snyder, No. 98-636-GMS, 2001 WL 515258, at *7 (D. Del. Apr. 10, 2001) (finding that if no administrative remedy is available, the exhaustion requirement need not be met). However, if prison authorities thwart the inmate's efforts to pursue the grievance, administrative remedies may be presumed exhausted, as no further remedies are "available" to him. Brown v. Croak, 312 F.3d 109, 112-13 (3d Cir. 2002).

Delaware Department of Correction administrative procedures provide for a multi-tiered grievance and appeal process. Medical grievances are first forwarded to the medical services staff who attempt an informal resolution of the matter. If this fails, the grievance goes to the Medical Grievance Committee, which conducts a hearing. If the matter is still not resolved, the inmate may once again appeal. DOC Policy 4.4 (revised May 15, 1998).

The amended complaint alleges that plaintiff filed grievances, letters, and made verbal complaints, but there was no actual response or solution within a reasonable time. (D.I. 25) Plaintiff submits exhibits that include grievances filed and letters written to Taylor and Malaney. (D.I. 55, Ex. A at 1-5) Given that exhaustion turns on the documents related to plaintiff's grievances, the Third Circuit has held that authentic documents may be considered without converting a motion to dismiss to a motion for summary judgment. Spruill v. Gillis, 372 F.3d at 223.

The documents submitted by plaintiff indicate that he filed medical grievances for mental health treatment, medications, and dental care, Nos. 21472, 22328, 20470 and 15434. (D.I. 55, **Ex. A**) The documents further indicate that, at hearings, the DCC staff recommended the withdrawal of grievances 21472, 20470, and 15434 because the matters were in litigation. Id. at Ex. A at 12, 18-19. Also, grievances were returned unresolved for resubmission. Id. at Ex. A at 13.

The documents provided by plaintiff indicate that he filed grievances and was moving toward exhaustion when DCC officials decided to withdraw the grievances because of "litigation." Also, grievances were returned as unresolved. Accordingly, plaintiff's administrative remedies are presumed exhausted, as no further remedies are available to him. Accordingly, the court will deny the motions to dismiss on the issue of failure to exhaust administrative remedies.

**C. Medical Needs Claim**

Dr. Cannuli, Benton, and Mickens argue that the amended complaint fails to state a claim under § 1983. They specifically argue that the amended complaint does not allege their deliberate indifference to a serious medical need.

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. Estelle v. Gamble, 429 U.S. 97, 103-105

(1976). In order to set forth a cognizable claim, an inmate must allege (i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need. Estelle v. Gamble, 429 U.S. at 104; Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm. Farmer v. Brennan, 511 U.S. 825, 837 (1994). A prison official may manifest deliberate indifference by "intentionally denying or delaying access to medical care." Estelle v. Gamble, 429 U.S. at 104-05.

However, "a prisoner has no right to choose a specific form of medical treatment," so long as the treatment provided is reasonable. Harrison v. Barkley, 219 F.3d 132, 138-140 (2d Cir. 2000). An inmate's claims against members of a prison medical department are not viable under § 1983 where the inmate receives continuing care, but believes that more should be done by way of diagnosis and treatment and maintains that options available to medical personnel were not pursued on the inmate's behalf. Estelle v. Gamble, 429 U.S. 97, 107 (1976). Moreover, allegations of medical malpractice are not sufficient to establish a Constitutional violation. White v. Napoleon, 897 F.2d 103, 108-09 (3d Cir. 1990) (citations omitted); see also Daniels v. Williams, 474 U.S. 327, 332-34 (1986) (negligence is

not compensable as a Constitutional deprivation). Finally, "mere disagreement as to the proper medical treatment" is insufficient to state a constitutional violation. See Spruill v. Gillis, 372 F.3d 218, 235 (3d. Cir. 2004) (citations omitted).

Even when reading the amended complaint in the most favorable light to plaintiff, he fails to state an actionable constitutional claim against Dr. Cannuli for deliberate indifference to a serious medical need. Rather, the amended complaint alleges that Dr. Cannuli stopped prescribing plaintiff a certain medication that plaintiff deemed appropriate for treatment. Said allegation does not rise to the level of a constitutional violation, but rather is indicative of a difference of opinion as to treatment. Accordingly, the court will grant Dr. Cannuli's motion to dismiss.

Benton contends that the allegations against him fail to state a claim. He argues that the amended complaint does not allege that he considered plaintiff for the special needs unit. Nor, he argues, does it allege it was he who determined placement in the special needs unit. Benton also argues that the amended complaint implicitly concedes that plaintiff was referred to a psychiatrist since it contains allegations against psychiatrist Dr. Cannuli.

When ruling on a motion to dismiss, the court considers the allegations on the face of the amended complaint. Nonetheless,

in support of his argument, Benton injects facts not contained in the record. For example, he states that upon information and belief, and upon approval by the multi-disciplinary team, plaintiff was moved to a special needs unit in June 2006. Benton also argues that, as a counselor, he cannot and does not prescribe medications and/or treat ADD. Because Benton relies upon facts outside the pleadings, his argument is better suited for a summary judgment motion.

The allegations in the amended complaint are that, despite promises, Benton failed to provide plaintiff with therapy for his ADD condition and failed to have plaintiff "re-visit" the psychiatrist. These allegations sufficiently allege deliberate indifference to a serious medical need, and the court will deny Benton's motion to dismiss.

Mickens argues that the amended complaint does not allege a serious medical need and does not identify the type of dental work that she allegedly refused to allow to proceed. She also argues that the amended complaint does not allege with particularity her personal involvement. In support of her position, Mickens injects facts that are not part of the record. She states that she is a dental assistant, only assists dentists during oral examinations and procedures, is not a dental supervisor, and has no authority to determine what dental work plaintiff may have done. Mickens further argues that the

allegations in the complaint are clear that plaintiff was being seen at the dental department and receiving dental care and treatment because the amended complaint alleges, "while the dentist was preparing to do dental work. . . ."  Like Benton, Mickens relies upon facts outside the pleadings, and her argument is better suited for a summary judgment motion.

The amended complaint sufficiently alleges that Mickens was deliberately indifferent to a serious medical need.  It alleges that plaintiff has "no teeth," that he presented for dental care and that Mickens refused to let the work go forward.  Accordingly, the court will deny Mickens' motion to dismiss.

### D. Personal Involvement/Failure to State a Claim

Malaney seeks dismissal arguing that the complaint fails to allege her personal involvement in the alleged wrongs and that liability may not be imposed upon her on the basis of respondeat superior.  The amended complaint alleges that Malaney allows, or causes the operation of, a medical department that is understaffed, unorganized, and unprepared to meet the needs of the prison population.  Plaintiff alleges that treatment is cursory and, in his case, negligent.  He further alleges that the mental health unit is overburdened to the point that he is being denied adequate mental health treatment, his present mental

health treatment is superficial, and his mental health condition is worsening.

"'A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior.'" Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Personal involvement can be shown through allegations that a defendant directed, had actual knowledge of, or acquiesced in, the deprivation of a plaintiff's constitutional rights. Id.; see Monell v. Department of Social Services, 436 U.S. 658, 694-95 (1978). Supervisory liability may attach if the supervisor implemented deficient policies and was deliberately indifferent to the resulting risk or the supervisor's actions and inactions were "the moving force" behind the harm suffered by the plaintiff. Sample v. Diecks, 885 F.2d 1099, 1117-118 (3d Cir. 1989); see also City of Canton v. Harris, 489 U.S. 378 (1989); Heggenmiller v. Edna Mahan Corr. Inst. for Women, No. 04-1786, 128 Fed. Appx. 240 (3d. Cir. 2005).

The facts as alleged against Malaney appear to be based solely on an impermissible theory of respondeat superior or vicarious liability. See Polk County v. Dodson, 454 U.S. 312, 324 (1981) (stating that a § 1983 claim cannot be based on

respondeat superior liability); Monell v. Department of Social Services of City of New York, 436 U.S. 658 (1978) (holding that supervisory personnel are liable under § 1983 only if they have some personal role in causing the alleged harms or were responsible for some custom or practice which resulted in the violations). Plaintiff does not allege that Malaney was responsible for a custom or practice that resulted in an alleged constitutional violation or that Malaney's actions or inactions were the moving force behind his alleged harm. Rather, plaintiff alleges that the prison is understaffed, unorganized, unprepared, and overly burdened by its inmate population. Plaintiff also alleges that the conditions resulted in his negligent treatment, not in the deliberate indifference to his serious medical need. Therefore, the court will grant Malaney's motion to dismiss on the basis of respondeat superior.

IV. CONCLUSION

Based upon the foregoing analysis, the court will grant the motions to dismiss filed by defendants Cannuli and Malaney and will deny the motions to dismiss filed by defendants Benton and Mickens. (D.I. 52, 65)  An appropriate order will be entered.